## ATHENS, NOVEMBER TERM, 1857.    571

Lallerstedt, ad'mr, vs. Jennings and Mosely, ex'ors.

LAWRENCE D. LALLERSTEDT, ad'mr, plaintiff in error, *vs.* JAMES JENNINGS and SEABORN MOSELY, ex'rs, defendants in error.

Mark Shipp died testate leaving the following will;

*Item second.* I give and bequeath to my beloved niece, Mahalia V. Shipp, a negro woman named Martha, about twenty-four years old, and her two children, to-wit; Harriet Jane, about six years old, and Nancy Turner, about two years old. But should my niece Mahalia Shipp die before she arrives to the age of twenty-one years, the above named negroes are to be reverted back to my estate. My niece Mahalia Shipp is to be educated and supported out of the estate, so long as she remains with my beloved wife.

*Item third.* I give and bequeath to Henry Mark Night, son of the Rev. John W. Night, two hundred dollars; one hundred to be paid him on the twenty-fifth day of December, one thousand eight hundred and fifty three, the other one hundred to be paid him one year after the first hundred is due.

*Item fourth.* I give and bequeath to my sister-in-law, Mrs. Rebecca Jennings, ten acres of land, embracing the building, whereon she now lives, during her life, or so long as she remains on the same.

*Item fifth.* I desire and direct that Mrs. Polly Linville remain with my beloved wife.

*Item sixth.* I give and bequeath to my beloved wife, all of my real and personal property, (the above named negroes excepted,) so long as she remains a widow, but in case she should intermarry, I wish a division immediately to take place.

*Item seventh.* In consideration of the latter clause of the fifth item, I wish my beloved wife, in addition to that part of the estate bequeathed to her by her father, to have enough of my separate estate to make in the aggregate one-half of all my estate real and personal, which one-half, as mentioned in this item, to remain her separate and distinct estate, during her natural life. In case of her wishing to remove from the county (Lincoln,) the negroes going into her possession from my estate, I wish and require that the said negroes be sold within the limits of the county above mentioned; also, that husband and wife, parent and child, be not separated, but sold in families. I wish and require that they be sold privately, if they do not bring so high a price.

*Item eighth.* I wish and require, upon the event of a division, that Bertha, a girl, be valued alone, and placed in Mahalia V. Shipp's lot, as disposed of in second item.

*Item ninth.* I will and bequeath unto my friend, Edmund J. Lyon, two hundred and fifty dollars; also, his wife, Prudence Lyon, two hundred and fifty dollars—to be paid out of that portion of my estate not disposed of in the foregoing items.

*Item tenth.* I further bequeath, at the death of my wife, when the estate will be finally closed, that Thomas A. Shipp and Benjamin Franklin Shipp shall

have an equal portion with my other legatees, also, my niece, Martha Frances Shipp, an equal portion with Thomas and Benjamin Shipp, as above mentioned. I further wish and require my executors to pay over to Nancy Turner Harris, two hundred dollars, which amount I will and bequeath unto the said Nancy T. Harris and her children.

Also, I will and bequeath unto Reason Lewis Woolly and Mary C. E. Woolly, an equal portion of my estate with my other legatees, at the death of my wife, as mentioned in item tenth.

*Item eleventh.* I also give and bequeath unto William Hutson Shipp, two hundred dollars, to be paid over at my wife's death, or division, as stated in tenth item.

*Held,* 1st. That the widow took a life estate only in all the property real and personal. 2d. That at her death it was to be equally divided between all the heirs at law of the deceased, the widow excepted; including, also, the persons mentioned in the will, to whom was bequeathed an equal portion of the residue. 3d. That the word *legatees,* in the will, must have its popular and not its technical signification.

In Equity, from Lincoln Superior Court. Decision on demurrer, by Judge THOMAS, at April Term, 1857.

This was a bill filed by Lawrence D. Lallerstedt, administrator of Mary Shipp, deceased, widow of Mark Shipp, deceased, against the executors of said Mark Shipp, for an account of the estate of their testator, and for the payment of the share or interest therein, belonging to complainant's intestate, to her heirs at law.

The defendants demurred to the bill, on the ground that, under the will of Mark Shipp, his widow, the said Mary, had no interest in his estate beyond her life, and upon her death nothing was transmitted or descended to her heirs, or to the complainant, her administrator.

The presiding Judge sustained the demurrer, and dismissed the bill, and complainant excepted.

LALLERSTEDT; and GIBSON, for plaintiff in error.

THOMAS; and STEPHENS, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

We acknowledge the obligation upon the Court to apply itself with all diligence to find out the meaning of the testator, in this as in every other will; and to give effect to the same, if it be practicable to do so. This Court has uniformly evinced *its loyalty* to this principle. And yet, after all, we are, not without some misgiving that, in our anxiety to carry into execution, this testament, we have adopted an arbitrary construction; and in the language of Vice Chancellor Wigram, allowed " conjectural interpretation to usurp the place of judicial exposition."

On the part of the plaintiff in error, it is insisted, that the whole estate was given to the wife, upon condition that she remained the widow of the testator; and that having died without marrying again, she took an absolute indifeasable fee. That if this be not so, then the bequests in the will, the *whole or some part of* them, are *void* for uncertainty; and that the wife being the heir at law, takes by way of reversion, the whole or some portion of the property.

In behalf of the defendants in error it is contended, that the wife took a life estate only, and nothing more.

We differ with both of the learned counsel as to the true interpretation of this will. We are pretty clear that, in no event, did the testator intend that his widow should take more than a life estate in his property. The difficulty has been in determining who took the remainder at her death. We find it impossible to hold that the particular legatees named took the residue. And yet it is quite certain that it was intended they should take something.

After considering carefully the circumsances of the testator, his family relations, and all the clauses of the will, our judgment is, that the wife never having married, took a life estate in the property, and by necessary implication, nothing more; and that at her death, the residue was subject to equal division between the whole of the next of kin, or heirs and

distributees of the testator, including the legatees specifiically named in the will, whether they occupied that relationship to the deceased or not. In other words, we apply the popular instead of the technical meaning to the term legatee. A person speaking of the birth of a child, often says, I have another legatee; or referring to his heirs at law at his death, calls them his legatees. That we might refer this fact to be decided by the jury, *Mr. Jarman, in his Treatise on Wills,* and all the authorities, are clear. But we do not think the meaning sufficiently obscure and ambiguous as to require this course. The alternative is between this disposition and a *total* failure of the dispository scheme for want of certainty.

Thus holding, we read the will as follows: "I give the whole of my property, real and personal, to my wife, during her life. At her death, when my estate will be finally *closed,* I will to Thomas A. Shipp and Benjamin Franklin Shipp, with my other distributees, my wife excepted, for whom I have already sufficiently provided, an equal portion of my estate; also, one equal portion to Martha Frances Shipp. I also will and bequeath unto R. L. Woolly and Mary E. Woolly, one equal portion of my estate, with my other distributees."

I have omitted to refer to the specific legacies set apart by the will; and also to the legacy given to Mahalia V. Shipp, who seems to have been a favorite, from the fact, perhaps, of her residing in his family. He set apart certain negroes, by name, to her; and in the eighth item of the will, the testator directs, that in the event of a division—probably referring to the first division, depending upon the contingency of his wife's marriage—that Bertha, a girl, be divided and placed in her lot. We ask what lot? What was in the contemplation of the testator, when he used this language? It refers to a division by and between whom? The defendant in error says, the other five legatees named in the tenth item of the will. We think it straining much harder to thus restrict the meaning, than to refer the words, as we propose to do

Lallerstedt, adm'r, vs. Jennings and Mosely, ex'rs.

to all who, by nature, must be supposed to have been the objects of the testator's bounty.

Our idea is, that when he was speaking of a " division" and a " lot," his mind was fixed upon all his next of kin, who would inherit from him at his death. And that in the tenth item, where he introduces five by name, and directs that they should take an equal portion with the rest of his legatees of his estate, his mind is still dweling upon the same relations who were present to his thoughts in the eigthh clause; and that too, as though he had mentioned them.

We concede that this case is not without doubt and difficulty; and that turn whichsoever way you will, you are beset with trouble. Candor constrains this admission. Still, all things considered—looking to all the persons who claim to be interested under the will, and keeping always in mind that the object and governing principle in this and all such cases, is to discover the intention of the testator, and when that can be ascertained, to give it effect—we are better satisfied wlth this view than any other.

We can readily perceive a sufficient reason for introducing the name of Mahalia V. Shipp. And did it appear from the will, which is defective in this particular, that the five legatees named in the tenth clause, would not take *as heirs,* the case would be a plain one. But we apprehend the fact is otherwise. And the main obstacle has been to account why it is, that if all the heirs are to take, a part of them only should be mentioned. All we have to say is, that no amount of metaphysical acumen can explain the operations of the human mind. They are past finding out.

Judgment affirmed.