GORMLEY, superintendent of banks, *et al. v.* WATSON *et al.*

No. 9683.   October 12, 1933.

*Alexander & Jones* and *Lee W. Branch,* for plaintiff in error.

*Jones, Johnston, Russell & Sparks, Wilcox, Connell & Wilcox,* and *Titus & Dekle,* contra.

Beck, P. J.   The Court of Appeals certified two questions to the Supreme Court.   (1)   "Is an order and judgment of a court of ordinary allowing the duly appointed and regularly qualified executor of an estate to resign, and the appointing of another person as administrator de bonis non cum testamento annexo, valid where it appears on the face of the record that no notice was given to the next of kin or to the persons most beneficially interested under the will, but that the proceedings for such resignation and appointment of a successor to such executor were in effect ex parte, and that the petition for such resignation and appointment was filed, the hearing had thereon, and the order passed, all on the same day?"   (2)   Do the provisions of the Civil Code (1910), § 3892, which relates to the powers, duties, and liabilities of executors, apply to § 4095, which relates to the resignation of administrators, etc., "so that the next of kin of a testate are entitled to the same notice as the next of kin of an intestate; and that the next of kin who are also legatees under the will are entitled to formal written notice of the resignation of an executor and the appointment of his successor, by reason of § 4095?"

We reverse the order of these questions and answer the second question before answering the first, because the answer to the first will be determined by the answer to the second.   In view of the similarity of the office of an administrator and an executor, and the broad language of § 3892, it must be held that the provisions of § 3892 apply to § 4095.   In the main, an executor and an administrator are appointed for the same purposes, and they perform the same duties.   In some respects the purposes of their appointments are somewhat different, and their duties subject to different conditions and controlled by different rules; but an executor and an administrator are appointed or designated for the purpose of taking charge of and administering the estate of a decedent.   They are

trustees, held by law to a high degree of fidelity, and they deal with property which is not their own and which must reach the cestuis que trust, heirs, beneficiaries, or creditors; and the general principles which control their conduct, define their duties, and fix their liabilities are substantially the same. The differences in the incidents of their trusteeship and in the discretion in the performance of their duties grow largely out of the fact that the executor is selected by the decedent and named in his will, and he is governed in the managing of the estate, the making of investments, and in other respects, by the will of the testator, as expressed in the will, in the event there is no conflict between the will of the testator and the law of the State. The administrator is not appointed by the decedent; but in proceedings, and in the administration of the estate, he is governed entirely by the law of the State. But an executor, unless it is specifically provided to the contrary in the will, or unless certain contingencies arise, is not required to give a bond. The administrator in all cases must furnish a guaranty for the faithful performance of his duties, by an adequate and solvent bond, the breach of which will give rights of indemnity to heirs and distributees and creditors. The executor has the right to sell the property of the testator without having first obtained authority from the court to do so. The administrator can not sell without an order of the ordinary. And there are other differences which the law recognizes. If the will of the testate authorizes it, the executor can sell at private sale with or without advertising. He can be authorized to hold the estate together, where the administrator could not. And there are other differences that might be pointed out. But after all, the offices of the administrator and the executor, their general duties, the nature of their duties, and their relation to the estates of which they are trustees are substantially similar; and that is one of the reasons for holding that the provisions of § 3892 are applicable to those of § 4095.

But the language of § 3892 and of § 4095 constitute the firm ground upon which the court bases its opinion that the provisions of § 3892 are applicable to § 4095. The language of § 3892 is as follows: "All the provisions of this Code with reference to administrators of estates, prescribing the commissions allowed to them, their duties, powers, and liabilities, the mode of effecting sales, of making and receiving titles to property sold or purchased by their

intestates, of investing the funds, of obtaining letters of dismission, of resigning their trusts, of removing proceedings to the county of their residence, of compelling settlements before the ordinary, of returns by representatives of deceased administrators, and in all other matters in their nature applicable to executors, shall be held and taken to apply to and include executors, to the same extent as if they were named therein." And § 4095 is in the following language: "Any administrator who, from age or infirmity, removal from the county, or for any other cause, desires to resign his trust, may petition the ordinary, stating the reasons, and the name of a suitable person qualified and entitled to and willing to accept the trust; whereupon the ordinary shall cite such person, and the next of kin of the intestate, to appear and show cause why the order should not be granted. If no good cause be shown, and the ordinary is satisfied that the interest of the estate will not suffer, the resignation shall be allowed, and the administrator shall be discharged from his trust whenever he has fairly settled his accounts with his successor and filed with the ordinary the receipt in full of such successor. Minors in interest shall be allowed five years from the time of their arrival at majority to examine into and open such settlement." This section applies to administrators, and is the only section of the Code which deals with the resignation of an administrator, and is made applicable to executors by § 3892, where it is declared that "All the provisions of this Code with reference to administrators of estates, prescribing . . the mode . . of resigning their trusts, . . and in all other matters in their nature applicable to executors, shall be held and taken to apply to and include executors, to the same extent as if they were named therein." Section 4095, considered in conjunction with section 3892, requires notice to the next of kin of the testator. The reason for giving notice to the next of kin may not be as strong in the case of an executor as in the case of an administrator, but there may be very strong reasons for giving notice to the next of kin; as, for instance, there may be a very large residuum estate not disposed of by the will.

We do not overlook this fundamental distinction between an executor and an administrator, that the former is selected by the testator, and the latter is appointed by the court, generally on the selection of the persons interested in the estate. But with certain

exceptions, some of which are pointed out above, the powers of an executor are similar in character to those of an administrator. We have not attempted to state all the exceptions to the general principle which we have stated, nor do we take up and consider the effect of the rule that the executor of a deceased executor becomes, by operation of law, the representative of the estate of the original testator and as successor executor has those powers which are by will given to the office of executor. The original executor can not name an executor of the estate represented by him; but where the original executor executes a will and therein names an executor for his own estate, the latter ipso facto becomes a successor executor of the original estate. *Jepson* v. *Martin,* 116 *Ga.* 772 (43 S. E. 75). But this rule in no way contravenes what we have said. ·

In view of what is said above, we reach the conclusion that the provisions of § 3892 are applicable to § 4095; and that the next of kin of a testate are entitled to the same notice as the next of kin of an intestate, and that the next of kin who are also legatees under the will are entitled to the formal written notice of the resignation of an executor and the appointment of his successor. In addition to the reasons briefly adduced, the ruling in *Head* v. *Bridges,* 67 *Ga.* 227, impels us to the same conclusion. In that case an executor made application to resign. The application was made in December, 1868, and he named a suitable person as qualified and entitled and willing to accept the trust. The order accepting the resignation and appointing the successor recited that the "widow, etc., and next of kin of testator aforesaid, has been cited to appear at this term." It appeared that there were minor children and legatees. The recital in the application that the widow had been cited was untrue on its face, because only six days, at the most, elapsed between the date of the filing of the application and the date of the order accepting the resignation and appointing the successor. This court said: "The application shows upon its face that it was drawn in December, 1868, certainly, and almost quite as certainly on the very day the court met. Not only so, but it shows that no one had any notice or was cited to appear except Mrs. Bridges, the coexecutrix of the applicant. These facts appearing on the face of the record itself, was not the whole proceeding a mere nullity, and should it not have been so treated by the court? That the application was made in December, 1868, appears from the very words used

in praying the citation requiring Mrs. Bridges, widow, etc., and the next of kin to appear at the next regular term of said court on the first Monday in December instant, to show cause, etc. To say that instant, in the connection used, meant anything other than the present or current month, would be to charge a degree of ignorance and stupidity to the counsel preparing the application, unworthy the humblest member of the profession, or else to stultify ourselves in defining the meaning of one of our plainest English words. The order of discharge was passed on the 6th day of December, 1868, and it was therefore an impossibility to have given the ten days notice required by law. Again, the order of discharge recites that, 'whereas the said Mary A. Bridges, widow, etc., and next of kin of testator aforesaid, has been cited to appear,' etc., and no objection being made, the resignation was allowed. This recital shows that Mrs. Bridges had been cited to appear, but when, how, or by whom, does not appear that we can find in the record. But it is insisted that the above order of discharge shows that the minors were served. The only reasonable construction which we think the words are capable of is, that Mrs. Bridges, widow of said deceased, and coexecutor with the petitioner, and who is the next of kin of testator, has been cited to appear, etc., and can in no wise be made to refer to the minor children, whose names nowhere occur in the whole proceeding, either by themselves or guardian. We are not to be understood as holding that the jurisdictional facts are to appear on the face of the proceedings to support the judgment, but that where the record offered shows affirmatively that the court did not have jurisdiction, then the judgment may be treated as a nullity." It is true that one of the Justices dissented in that case, but we do not construe his dissent as opposing the controlling proposition before us.

What has been said answers the second question. And in view of that answer, the first question must be answered in the negative.

*All the Justices concur, except Bell, J., disqualified.*