27346. THOMASSON *et al. v.* BARBER *et al.*

DECIDED JULY 12, 1939.

*J. T. Thomasson, Boykin & Boykin,* for plaintiffs in error.
*Samuel J. Boykin, J. L. Smith,* contra.

BROYLES, C. J.    This was an action on objections to the qualifications of J. T. Thomasson, W. E. Thomasson, and J. J. Thomasson as executors under the will of Mrs. Safronia Trawick Thomasson. The objections were filed by Mrs. Nancy Barber, a legatee under said will and who was interested in the estate. Mrs. Safronia Trawick Thomasson was the wife of J. J. Thomasson. The objections were overruled in the court of ordinary, and the case was appealed to the superior court. In that court the objections were amended to meet the special grounds of the demurrer interposed; and the general grounds of the demurrer were overruled. The only question before this court is:  Did the court err in overruling the general demurrer to the objections as amended?  The objections as amended (formal and immaterial parts omitted) read:

"Now comes Mrs. Nancy Barber, who is a legatee under the will of Mrs. Safronia Trawick Thomasson, and is interested in said estate, and files this her objection to the appointment of J. T. Thomasson and W. E. Thomasson and J. J. Thomasson as executors under said will and to their qualifications and appointment in said estate for the following reasons:  1.  That J. T. Thomasson was appointed administrator of the estate of Mrs. Safronia Trawick Thomasson, and as such took charge of her estate.  2.  That he executed a bond as such administrator with W. E. Thomasson and J. J. Thomasson as securities on said bond.  3.  That if said will had not been set up, J. J. Thomasson would have been the sole

328

heir at law of Mrs. Safronia Trawick Thomasson. 4. 'That the said J. T. Thomasson, acting as administrator of said estate, has collected and paid out large sums of money, in fact paid out all money that he collected illegally, and that he and his said bondsmen are liable to said estate and the legatees thereof. 5. That the said J. T. Thomasson's, W. E. Thomasson's, and J. J. Thomasson's interests are antagonistic to the interests and rights of the legatees under the will of Mrs. Safronia Trawick Thomasson, because the said J. T. Thomasson was appointed administrator of the estate of Mrs. Safronia Trawick Thomasson, and W. E. Thomasson and J. J. Thomasson signed his bond as administrator, and the said J. T. Thomasson, as such administrator, paid out to L. M. Trawick $2000 illegally; that he paid to J. J. Thomasson $4300 illegally, and in fact paid out some $7000 or $8000 illegally, and that the said J. T. Thomasson is liable to the legatees under said will, and that W. E. Thomasson and J. J. Thomasson, as sureties on his bond as administrator, are liable to said estate and to the legatees under said will, and the interest of each of the above-named parties is antagonistic to the interest of the legatees under said will. That the payment to L. M. Trawick was made Nov. 3, 1936. 6. That the said J. J. Thomasson is indebted to the estate of Mrs. Safronia Trawick Thomasson in the sum of $7000, for which Mrs. Safronia Trawick Thomasson held a security deed to his house and lot in Carrollton, Georgia, and that J. T. Thomasson, acting as administrator of said estate, paid to the said J. J. Thomasson the sum of $4300, while he [J. J. Thomasson] was indebted to the estate, and it will be necessary, in protecting the legatees under said will, to recover back said sums of money paid out illegally and to recover and collect the debt owed by J. J. Thomasson to the estate. That the payment of the said $4300 was made at a date unknown to objector, but it is the last item in the return and is not dated. [Paragraph 7 is omitted as immaterial.] 8. That the said J. J. Thomasson, J. T. Thomasson and W. E. Thomasson, failed and refused to offer the will of Mrs. Safronia Trawick Thomasson for probate within a reasonable time, and that when the same was offered for probate by W. E. Hudmon, one of the executors named in said will, as before stated, J. J. Thomasson and J. T. Thomasson filed a caveat and opposed the probation of said will in the court of ordinary, and when the same was appealed

to the superior court from the court of ordinary they appeared and opposed said probation proceedings, and testified against the probation of said will, and when the jury found in favor of the probation of said will, the caveators filed a motion for new trial, and when the same was overruled by the judge of the superior court they filed a bill of exceptions to the Supreme Court in an effort to set aside the verdict of the jury probating said will, and by their failure to offer said will for probation and in opposing same, each of the above-named parties have renounced their rights to be executors under said will. A copy of the return of J. T. Thomasson, admr., showing how he paid out the funds, and the amounts received, is hereto attached, marked 'exhibit A,' and made a part hereof."

It appears from said exhibit that J. T. Thomasson, as administrator of the estate, received, from various sources, the sum of $7646.12, and that he paid out the entire amount to certain named persons. It was stated in some of the items that the payments were made for certain named services rendered to the estate, but one item, under the heading "Disbursements," is merely as follows: "Nov. 3, 1936, L. M. Trawick $2000;" and the last item under said heading reads: "Paid to J. J. Thomasson $4350.61." This last item is not dated, and neither of the two items shows for what services, or why, the payment in question was made. It is specifically alleged in the objections as amended that both of said payments were illegal. In our opinion the objections were not subject to general demurrer. In *Maddox* v. *Maddox, 27 Ga. App.* 369 (108 S. E. 304), cited by the plaintiffs in error, it is held that the widow of the intestate should not be denied the appointment as administratrix of the estate, when she is of sound mind, "upon the mere speculation that she will, on account of lack of business experience and want of capacity to manage the particular estate, mismanage it and prove unfit for the trust reposed." But, in passing on the general demurrer in the instant case, where the allegations of the objections, and the facts stated therein in support of the allegations, reasonably show that the interests of the persons appointed executors of the estate are "so adverse to that of the estate as would likely jeopardize its interest as against the rights of others having an interest therein" (*Davis* v. *Davis, 33 Ga. App.* 628, 127 S. E. 779), the court did not err in overruling the demurrer. *Judgment affirmed. MacIntyre and Guerry, JJ., concur.*

330

Guerry, J., concurring specially. The objections to the appointment of the named parties as executors of the will set out grounds which would have supported a proceeding to have them removed after their appointment as such executors. It is alleged that their interests are adverse to the interests of the estate they are to represent. It is alleged that they failed to offer the will for probate within a reasonable time or within the time required by statute, and therefore renounced their right to be named executors; and that they have mismanaged and wasted the estate. The plaintiffs in error contend that the judgment of the superior court establishing the will as propounded was an adjudication that they were the legally named executors under the will. Nothing else appearing, this contention is true. The issue being passed on by the superior court was whether or not the will offered was the will of the deceased. The jury found in favor of the will, and the judgment in that case was affirmed by the Supreme Court. *Thomasson* v. *Hudmon,* 185 *Ga.* 753 (196 S. E. 462). It followed as a matter of course that if the will named J. T. Thomasson, J. J. Thomasson, W. E. Thomasson, and W. E. Hudman as executors, and the will itself was entitled to probate in solemn form, such parties were entitled to have issued to them letters testamentary. In a proceeding brought before the issuance of such letters, setting up objections to such appointment, we see no reason why the same objections that might be urged in a proceeding for removal might not be urged in objections to the original appointment, especially where such objections pointed out that the persons named as executors failed and refused to offer the will for probate within a reasonable time, and that such conduct may have amounted to a renunciation of their rights as executors. The Code declares: "If the executor fails to offer the will for probate for an unreasonable time, or is not qualified within the time specified, he shall be deemed to have renounced his right as executor." § 113-1227. "The executor shall offer the will for probate as soon as practicable after the death of the testator, and shall qualify, unless restrained by the will, within 12 months after the same is admitted to record." § 113-615. The fact that the will was established as the last will and testament of the testatrix, as against the caveat of some of those named in the will, will not prevent the ordinary, upon a proper showing, from failing and refusing to appoint such persons as executors under the will, although named therein as such.